# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-40051-01-JAR |
| ) | |
| ANTONIO C. CLARK, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on defendant Antonio Clark's Motion to Suppress (Doc. 10) and Memorandum in Support (Doc. 11), requesting the suppression of evidence, including a gun, seized during a search of a motel room occupied by the defendant, and any derivative evidence, including law enforcement testimony. A suppression hearing was held on October 14, 2009, and testimony was presented. The Court has reviewed the evidence and the parties' submissions and is prepared to rule. For the reasons set forth in detail below, defendant's motion is denied.

### I.  Background Facts[1]

On April 1, 2009, Topeka Police Department Officer Andrew Beightel was conducting a hotel criminal interdiction check of various hotels in Topeka for the purpose of apprehending criminals. He stopped at Motel 6, located on Wanamaker Road in Topeka, Kansas, and spoke

---

[1] Although witnesses at the suppression hearing occasionally referenced a "Narrative Report," the document was not submitted into evidence. Therefore, the following facts are taken from the parties' briefs and testimony presented at the suppression hearing.

with the hotel desk clerk. The clerk printed a list of persons who had rented rooms at the Motel. Officer Beightel noticed that Room 132 had been rented to "Boisey Barefield," a person Officer Beightel knew from law enforcement work was suspected of involvement with narcotics and other criminal activity. The clerk informed Officer Beightel that members of the housekeeping staff had reported the smell of marijuana and saw plastic sandwich bags in a room rented to Barefield.[2] Officer Beightel radioed for backup, and Topeka Police Officer Burd joined him at the motel.[3]

The officers went to Room 132 to conduct a "knock and talk," which is a consensual encounter that allows the officers to view activity through the door. They knocked on the door of Room 132 a couple times. Officer Beightel noticed the curtains move slightly, but no one answered. He used his cell phone to call Room 132.[4] Although the phone rang multiple times, no one answered. After they knocked one more time, a woman, who was later identified as Kourtney Pierre, opened the door. Officer Beightel testified that the room was well-lit. Through the open door, he saw a bag on the night stand between the two beds containing a substance he recognized to be marijuana, based on his training and experience. Officer Beightel requested permission to enter, and when Pierre denied consent, he placed his hand on the door and informed the occupants he was entering the room. Officer Beightel testified that, having seen the marijuana, he intended to secure the room.

---

[2] Officer Beightel was uncertain whether housekeeping saw the bags and smelled the marijuana in Room 132, or whether they noticed these details in another room previously rented to Barefield.

[3] Corporal Burd's name was never provided in full.

[4] At the suppression hearing, Officer Beightel again clarified that the police report was inaccurate on this point. He did not ask the desk clerk to call the room, rather, he called the room using his own cell phone.

There were two other occupants in the room: a woman, later identified as Tamara Raine, standing on the east side of the room, and defendant Antonio C. Clark seated upright on the bed on the west side of the room. The officers asked if anyone else was present, and Pierre told them no. Officer Beightel then checked the bathroom and found no one. Officer Beightel picked up the bag of suspected marijuana from the night stand, and as he passed by the defendant, the defendant asked why they were in the room.[5] Defendant appeared agitated, so Officer Beightel asked him to stand, and placed him in handcuffs to ensure the officers' safety.

Identification was taken from all three occupants and relayed to the police department's dispatch for a wants and warrant check. Kansas Department of Corrections Special Investigation Agent Harry Hammer reported over the radio that he had an outstanding postrelease supervision "arrest and detain" letter for the defendant,[6] and that defendant was reported to have threatened an individual with a firearm the previous evening, March 31, 2009, and may still have a firearm with him. Officer Hammer advised that he was on his way to the scene with the "arrest and detain" letter. Realizing there may be a firearm in the room, Officers Beightel and Burd placed the two women in handcuffs and directed them to sit on the bed closest to the door. Dispatch contacted the officers to report the warrant check revealed that the defendant was wanted on an "attempt to locate" arising from the altercation the night before.

---

[5]Defendant's brief states, "Defendant allegedly became agitated, asking why the police were present and in the room." (Doc. 11 at 3.) The government's brief states the defendant asked "why the officers were at the hotel and why there were in his room." (Doc. 13 at 4.) Although a reference to "his" room might indicate ownership, both parties noted in their briefs that the room was rented to "Boisey Barefield." Officer Beightel also testified at the suppression hearing that the room was registered to Boisey Barefield.

[6]As a condition of postrelease supervision, defendant was subject to the following condition: "I agree to . . . be subjected to a search by parole officers or designated law enforcement officers of my person, residence, and any other property under my control." (Doc. 11 at 4.) Agent Hammer testified that an "arrest and detain" letter is issued by a parole officer, but is not entered into the national crime intelligence computer. An officer would only know of it if it was communicated to him or her directly.

Officer Hammer then arrived at the motel with four other officers.[7] When Officer Hammer arrived with the "arrest and detain" letter, he informed the defendant that a parole violation warrant had been issued for his arrest, and there was a report he may have been involved in an assault the night before. Officer Hammer then had the defendant stand up, he performed a pat down search of defendant, and Officers Hammer and Beightel lifted the mattress of the bed where defendant had been sitting and located a handgun between the mattress and the bedsprings near the head of the bed. Officers removed the three motel room occupants and brought a camera into the room to photograph the scene before the gun and marijuana were collected. The handgun was determined to be a Smith & Wesson, Model SW40VE, .40 caliber pistol. It contained a loaded magazine and a live round in the firing chamber.

Later investigation revealed that this handgun had been sold to Brandi Kelly. Kelly had been romantically involved with the defendant for ten years, they had two children together, and at the time of the defendant's arrest, Kelly was pregnant with their third child. Kelly told police she routinely kept the handgun under the mattress at the address where she and defendant were living. She knew the handgun was there on March 31, 2009, but she discovered the handgun missing on the morning of April 1, 2009.

After his arrest, around 1:00 p.m. on April 1, defendant was taken to the police station, was given *Miranda* warnings, and agreed to speak with law enforcement. Defendant stated he had not been at the motel room long before police arrived; he had laid down to rest there; and he

---

[7]Although the witnesses at the suppression hearing were unclear as to when each of the remaining officers arrived, the following officers were present at some point during the encounter: Topeka Police Officers Beightel and Youse; Corporal Burd; Kansas Department of Corrections Officers Hammer and Custenborder; Kansas State Parole Officer Jim Galbraith; Fugitive Task Force Officer Tony Obregon; and Deputy U.S. Marshal Travis Edwards. At some point, there may have been as many as eight officers present.

did not know who had rented the room. He further advised that he had gone to the room to see the women and did not remember who he had called to find out about the room. Defendant denied that he had ever seen the handgun before, denied having any idea who owned the gun, or knowing the gun was under the mattress below him. He denied having pointed a gun at a man the night before.

On June 10, 2009, the Grand Jury returned the indictment, charging defendant with one count of being a felon in possession of a firearm shipped or transported in interstate commerce, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).

**II.     Discussion**

Defendant argues his Fourth Amendment rights were violated because the search was not justified under the Fourth Amendment: (1) the search was not contemporaneous with the arrest, and therefore, not incident to arrest; (2) the parole officer who conducted the search was not acting to rehabilitate the defendant, and therefore, the "special needs" doctrine did not apply; and (3) the defendant's parolee agreement only permitted the search of property within the parolee's control, and the motel room and bed were not within his control.

The government responds by arguing that, (1) defendant lacks standing to challenge the search of the motel room; (2) assuming there was standing, the area searched was under the defendant's immediate control contemporaneous with his lawful arrest, and (3) the search was valid under his parolee agreement.

The Court finds that standing is a threshold issue to any question of whether defendant's rights under the Fourth Amendment have been violated. Therefore, the Court will address this issue first.

5

The Fourth Amendment protects persons from unreasonable searches of their "persons, houses, papers, and effects."[8] "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable."[9] "The defendant must show by a preponderance of evidence that he or she was personally aggrieved by the alleged search and seizure."[10] "It is immaterial if evidence sought to be introduced against a defendant was obtained in violation of someone else's Fourth Amendment rights."[11] In determining whether an expectation of privacy is reasonable, the Court applies the following two-factor test: "(1) whether the individual, by his conduct has exhibited an actual (subjective) expectation of privacy, and (2) whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable."[12]

"[O]vernight guests have a reasonable expectation of privacy in the home of their host" and, in some contexts, social guests who do not stay the night may also have a reasonable expectation of privacy in their host's home.[13] With regard to motel rooms, the Tenth Circuit has

---

[8] U.S. Const. amend. IV.

[9] *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

[10] *United States v. Conway*, 854 F. Supp. 834, 837 (D. Kan. 1994).

[11] *United States v. Carr*, 939 F.2d 1442, 1444 (10th Cir. 1991) (quoting *United States v. Rascon*, 922 F.2d 584, 586 (10th Cir. 1990)).

[12] *United States v. Cooper*, 283 F. Supp. 2d 1215, 1245 (D. Kan. 2003) (quoting *United States v. Jones*, 213 F.3d 1253, 1260 (10th Cir. 2000)) (internal quotations omitted).

[13] *United States v. Thomas*, 372 F.3d 1173, 1176 (10th Cir. 2004) (citing *Minnesota v. Olson*, 495 U.S. 91, 98 (1990); *United States v. Rhiger*, 315 F.3d 1283, 1286–87 (10th Cir. 2003)). In *Minnesota v. Carter*, the United States Supreme Court held that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Carter*, 525 U.S. at 89. In *United States v. Rhiger*, however, the Tenth Circuit held that the defendant had standing even though he was not intending to stay overnight, because he was a regular social guest in the home and had stayed overnight on prior occasions.

held that "[o]vernight guests and joint occupants of motel rooms possess reasonable expectations of privacy in the property on which they are staying."[14] In determining whether the expectation of privacy is reasonable, the Tenth Circuit has "traditionally considered whether the individual had lawful ownership or control of the premises searched," and whether the defendant had the "status of . . . an overnight guest."[15] In other words, the Tenth Circuit "require[s] a defendant to demonstrate that he was the registered occupant of the room or that he was sharing it with the person to whom the room was registered."[16] Without this showing, courts have found the visitor did not have a reasonable expectation of privacy in the motel room.[17]

---

*Rhiger*, 315 F.3d at 1286–87. The Tenth Circuit distinguished its holding in *Rhiger* from the Supreme Court's holding in *Carter* by noting that *Carter* more specifically held that "a person who is present at another's home, with permission, simply for the purpose of consummating a *business transaction* does not have a reasonable expectation of privacy there." *Thomas*, 372 F.3d at 1176 n.1 (citing *Carter*, 525 U.S. at 90–91) (emphasis added).

[14] *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004) (citing *Carter*, 525 U.S. at 89–90; *Stoner v. California*, 376 U.S. 483, 489–90 (1964)).

[15] *United States v. Gordon*, 168 F.3d 1222, 1226 (10th Cir. 1999) (citing *Carr*, 939 F.2d at 1446); *see also Carter*, 525 U.S. at 89 ("[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not.").

[16] *Gordon*, 168 F.3d at 1226 (citing *Carr*, 939 F.2d at 1446; *United States v. Conway*, 73 F.3d 975, 979 (10th Cir. 1995)). At the very least, a defendant must "demonstrate, in the case of a motel room, that he was the invited guest of the renter of the premises." *Conway*, 73 F.2d at 979.

[17] *See United States v. Robertson*, 297 F. App'x 722, 726 (10th Cir. 2008) (affirming the district court's denial of suppression, noting, "the suite was not registered to any of the occupants, and no personal items indicating an overnight stay were present. All the evidence indicated that the suite was used only to manufacture and distribute illegal drugs.") (citing *Carter*, 525 U.S. at 91; *Gordon*, 168 F.3d at 1227); *Gordon*, 168 F.3d at 1226 (holding that, even though defendant had a key to the motel room and paid for the room, and even though men's clothing and toiletries were found in the room, defendant did not have a reasonable expectation of privacy because the room was registered to "Tiffany Myers" at a single occupant rate, there was no evidence the clothes and toiletries were his, and there was no indication he was a co-occupant or Myer's guest); *United States v. Cantley*, 130 F.3d 1371, 1377–78 (10th Cir. 1997) (noting that the hotel room was registered to "Darrell Rhone" and the defendant was not a registered occupant of the hotel; having produced no evidence of Rhone's identity, defendant's relationship with Rhone, or why defendant was staying in Rhone's hotel room, the Tenth Circuit affirmed the district court's denial of suppression); *United States v. Deninno*, 29 F.3d 572, 576 (10th Cir. 1994) (holding that motel room was registered to another person, and because defendant did not dispute these facts in his motion to suppress, he did not have standing to object to the search); *United States v. Conway*, 854 F. Supp. 834, 838 (D. Kan. 1994) (finding that defendant did not have standing because he was not registered for the room, he did not know to whom the room was registered, he was not an overnight guest, and he was in the room merely to engage in sex), *aff'd*, 73 F.3d 975 (10th Cir. 1995); *United States v. Cook*, Case No. 08-2295, 2009 WL 2952144, at *3 (10th Cir. Sept. 16, 2009) (noting that defendant

7

The government argues that defendant lacks standing to challenge the search because he did not register the room, did not know who registered it, was not an overnight guest, and was only visiting the two women present. Defendant argues that a guest in a motel is a "social guest" with a reasonable expectation of privacy under the Fourth Amendment.

The defendant bears the burden of showing a reasonable expectation of privacy in the place searched.[18] He must make this showing by a preponderance of the evidence.[19] Here, defendant cites case law extending Fourth Amendment protection to a hotel guest who was actually registered and staying overnight,[20] a social guest who was invited to spend the night in a relative's home and intended to do so,[21] and a regular guest in a home who occasionally spent the night, even if he did not intend to stay over that particular evening.[22] None of the cases cited by defendant are analogous to the present case.

At the suppression hearing, defendant produced absolutely no evidence of standing. When officers entered, defendant was sitting casually on the bed. The room was registered to a "Boisey Barefield." Defendant produced no evidence of Barefield's identity, and failed to show

---

did not have standing to object to the search of the motel room because he was not an overnight guest or a joint occupant: the room was not rented to him and he was not staying overnight; even if he was an invitee of the person who rented the room, his privacy rights were not "equal to that of the motel's actual guests"); *United States v. Wai-Keung*, 845 F. Supp. 1548, 1562 (S.D. Fla. 1994) ("Mere presence in a hotel room registered to another does not establish the requisite expectation of privacy. . . . Where a defendant has neither registered nor paid for the room himself, and has left no personal belongings in the room, he has not established a legitimate expectation of privacy in the room.")

[18]*Carter*, 525 U.S. at 88.

[19]*Conway*, 854 F. Supp. at 837.

[20]*Stoner v. California*, 376 U.S. 483 (1964) (holding a search of petitioner's room without his consent was unreasonable).

[21]*United States v. Thomas*, 372 F.3d 1173, 1176 (10th Cir. 2004).

[22]*United States v. Rhiger*, 315 F.3d 1283, 1286–87 (10th Cir. 2003).

any relationship to Barefield, or any invitation from Barefield to visit the motel room. Defendant did not show that he even knew Barefield. Furthermore, defendant did not produce evidence or testimony showing how long he had been in the motel room, what his purpose was in visiting the motel room, or what his relationship was to the other women who were present in the room. In fact, no evidence was produced showing that anyone in the room at the time of the search was registered or listed as an occupant at the motel. For a person to be a "social guest," he must demonstrate a "degree of acceptance into the household" and an "ongoing and meaningful connection to [the] home."[23] Defendant has not done so.

The present case is analogous to *United States v. Carr*.[24] In *Carr*, the Tenth Circuit found the defendant did not have a legitimate expectation of privacy in a hotel room where he had stayed for three weeks, because he failed to show that it was registered to him "or that he was sharing it with someone to whom the room was registered."[25] The Circuit took note of the fact that the defendant did not testify at the suppression hearing to establish his Fourth Amendment rights, even though such evidence would not be used against him at trial.[26]

Similarly, this Court finds that, having produced no evidence showing a reasonable expectation of privacy in Room 132 of Motel 6 at the time of the search, defendant lacks standing to object to the search. At the suppression hearing, the Court invited defense counsel to

---

[23]*United States v. Poe*, 556 F.3d 1113, 1122 (10th Cir. 2009) (quoting *Rhiger*, 315 F.3d at 1286–87).

[24]939 F.2d 1442 (10th Cir. 1991).

[25]*Id.* at 1446 (noting that the room was registered to a woman who was not present during the search or staying at the hotel); *see United States v. Conway*, 854 F. Supp. 834, 838 (D. Kan. 1994) (finding that defendant did not have standing because he was not registered for the room, he did not know to whom the room was registered, he was not an overnight guest, and he was in the room merely to engage in sex), *aff'd*, 73 F.3d 975 (10th Cir. 1995).

[26]*Carr*, 393 F.2d at 1448 (citing *Simmons v. United States*, 390 U.S. 377, 394 (1968)).

9

produce evidence of standing.  Although defense counsel told the Court that he intended to show the defendant was a social guest, and was not on the property for any commercial purpose, no testimony or evidence, direct or circumstantial, was presented at the suppression hearing to develop these claims.  There was no evidence of any relationship between defendant and Boisey Barefield, and the nature of defendant's relationship to the women in the room was never defined.  Defendant has not met his burden of showing a reasonable expectation of privacy, a showing that must be made by a preponderance of the evidence.[27]  Because the presence of a reasonable expectation of privacy is a threshold issue to a discussion of Fourth Amendment rights, the Court declines to discuss defendant's other arguments for suppression.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to suppress (Doc. 10) is DENIED.

Dated:  November 12, 2009

                                         S/ Julie A. Robinson
                                         JULIE A. ROBINSON
                                         UNITED STATES DISTRICT JUDGE

---

[27] *See Conway*, 854 F. Supp. at 837.